Land Company versus Bate Land & Timber and Mr. Learberg whenever you're ready take your time but whenever you're ready we'll hear from you. I don't think he realized you asked him to come. Mr. Learberg. Yes, I think you might have been waiting for your colleagues to. It's southern gentility I was trying to bring. Well, he's setting up his library. It's a big record. May it please the court, Matt Learberg appearing for the appellant, Bate Land Company. My colleague, Lori Biggs, will be reserving five minutes for rebuttal. This is a case about a debtor with more than sufficient assets to make 100% payout, a hundred cents on the dollar, through a bankruptcy reorganization to a secured creditor. And that secured creditor was entitled to that hundred cents on the dollar under the code standard of indubitable equivalence. The debtor then hurried to consummate the plan in an attempt to take away the appeal right that the creditor had. And we're asking today for the decision of the district court to be reversed. And for this case to be remanded back down to the bankruptcy court for proper application of the indubitable equivalence standard. What is that standard? Define that part. Does that mean beyond a reasonable doubt or what? What does it mean? The central, of course, indubitable means without doubt. I think the key word that governs it is certainty. So if you have a case where you're examining cash, cash, of course, is its own equivalent. So cash would meet the indubitable equivalent standard for a claim of $14 million, a return of $14 million, and cash would meet the standard. And kind of along the spectrum, you have things that are where the certainty of what the assets to be transferred are starts to wane. For example, treasury bills would probably be sufficient. Way on one end of the spectrum is this case where we have raw, undeveloped land. It's not marketable. It's not income producing. There's no comparables. And what the bankruptcy court endeavored to do was to try and come up with a guesstimate for the fair market value of that property. Have you guys tried to sell that land since the proceeding? No, Your Honor. And the reason is that we didn't want to contribute to any sort of mootness argument. Well, sure. But if you sold it for the full amount of the debt, it would have mooted it in a happy way. And, Your Honor, you've identified exactly the issue, which is once the land sells, all the uncertainty goes away, which is why the right solution in a case like this is to liquidate the land. Then there's no doubt. Sure. Your Honor. Go ahead. Well, the bankruptcy court made, it seemed to me, some fairly detailed findings adopting the highest and best use standard and relying on the appraisals presented. The major disagreement was whether development, as I read it, and correct me if I'm wrong, whether development is financially feasible. And the bankruptcy court agreed with the debtor that it is because the timber has been largely depleted, and there are all sorts of factors that make this marketable land. There's a stable real estate market in the area. There's new development. The market slumped, but is rebounding. There are new residents. There's water frontage, hindrance-free, and there isn't any more, and neither has current merchantable timber. So why would it not be, and it discounted BLC's appraisal because your appraiser violated, according to it, the first principle of using comparables that have the same highest and best use. So what, we're not writing on a blank slate. What did the bankruptcy court do wrong? The central error in the bankruptcy court is not, and the one we're focusing on appeal, it's not the minutia of the valuation process. It's the fact that after the valuation process, that the court went through the valuation process, the court said, okay, I think I have a fair market value. I have a guess as to what this land is worth. And what the court did is took that fair market value and put an equal sign and put the indubitable equivalent of our claim. That is a legal error. That's a de novo review, legal error that the bankruptcy court made, and there are several mistakes baked in there. The first is kind of just a systematic problem, and that is, how can this land, where not withstanding the bankruptcy court's analysis, is really the most difficult thing to value that you can imagine along the spectrum of certainty. How can that land ever meet the incredibly high standard that Judge Floyd mentioned, which is this indubitable equivalent, this cash equivalent standard? Well, let's talk about the MAC factor just a moment. Factor one doesn't seem to weigh against or for either one, because there was a stray salt. Factor two, whether the reorganizational plan was substantially committed, consummated, that kind of weighs against you. And then the third, as to whether the extent to which relief requests on the appeal would affect the success of the organization, that kind of favors you. And then the last, whether it would affect the interests of third parties, and that kind of weighs in your favor, too. So who wins? I agree with your assessment, Judge Floyd. Well, I'm not sure, why does it affect the, there are other people who have been affected by this. There are other creditors? But that is the key error that the district court made, Judge Duncan. What the district court did is just kind of, in a couple pages, Judge Boyle listed, here are some third parties that have had things happen to them since the plan was consummated. Well, let's see. The debtor has engaged in development, there have been, there are, but there are still other claimants that the debtor has to pay. It isn't just, I believe at one point, BLC characterized this as a two-party reorganization, but there are now more parties involved. Are there not? Well, there really are not any parties. The central issue on third parties, Your Honor, is are there third parties that are relying on the consummation of the plan? So in the cases where there's equitable mootness found, like, for example, the US Airways case or MAC panel, there is a but-for cause. There's an investor who says, I will not infuse money into this going forward operation unless I get this condition. There's nothing like that here. So what do we do with that finding, though? The finding's wrong. It's erroneous, Your Honor. I mean, the district court took no live testimony. The district court didn't have a hearing, have an argument. This is a cold record review by the district court. That's very, because that's what it seems, it seems to me, what I'm struggling with here is that we have to disagree at some level with the district court's findings of fact. And that's essentially what, and I think that's essentially what the, why the district court, the bankruptcy court denied the request, finding no likelihood of success on the merits because the only basis on which to succeed is its disagreement with the bankruptcy court's findings of fact and evidentiary rulings regarding valuation. So that's, that's kind of, that's what I'm, what I'm having trouble with, where to put, it seems to me to put the thumb on the scale in your favor requires us to question, to find clear error and abuse of discretion. Yes, and you know, there's a lot of talk about the different standards of review that could apply in this case. And let's just walk through those briefly. Sure. So the underlying indubitable equivalent question, as I mentioned earlier, there's this kind of valuation and fact-based inquiry, sure. But then there's the legal problem of equating fair market value of this uncertainly valued property with the indubitable equivalent standard. That's a bankruptcy code interpretation issue. Then we get to the equitable mootness question, and of course there is a split in the circuits as to how to do it. And really, this court, like it has before, need not resolve that today, it can just apply the same exacting standard it has in the past to cases of equitable mootness. Is that the only issue before us, the equitable mootness? Oh no, Your Honor. They're both before the court at this time. Both, actually there's three, counting the interest issue, which we can discuss if the court would like. Well, as to the third party effect, is it or is it not true that VLC has 99% of the total claim? It's true. And so how would that affect third party? Well, that's just it, Your Honor. I mean, when we say it's a bilateral or two-party dispute, yes, there are $10,000 here and $50,000 there. Those have largely already been paid out. In fact, the debtor hurried to pay them out so they could bolster, accelerate, and bolster their claim for substantial consummation. Whereas you tried to stall it for exactly? Well, we tried to stall it because the case law says you have to go and seek a stay. Okay. And as the concurring... Yeah. You didn't come to us, did you? We came to this court in September. So it was right after the equitable mootness order was entered. So how much land has been sold to the North Carolina Coastal Land Trust? That's one small parcel that was sold in connection with providing a buffer around the Navy base. And this is the key question. Well, I understand your argument to be the equitable mootness, if I understand the doctrine, is basically a notion that it's hard to undo something that's already been done. And one of the important factors is if third parties have been affected. So the land trust, we can't get the property back from the land trust and can't undo that. But your argument, I gather, is that we don't need the land trust in order to still... There's still assets that can be included in the lien and should have been included in the lien because of the challenge to the market assessment on the land that you still have a lien on. Yes, Your Honor. And the factors that this court laid out in Mac panel, two of those factors, and the most important factors focus on... It uses these words. What is the relief requested on appeal? So it's not a matter of could a third party be affected if the entire plan were booked up. And we are not coming to you to ask to go back to square one. That is not the request. If they sold all the land as a single cohesive parcel to somebody else, to some large tree harvesting company or something like this, it seems to me equitable mootness kicks in pretty directly. Yeah. In other words, we don't have these other parties before us. They're bona fide purchasers for value. And they buy all the land under the plan. And at that point, all the land that bait land and timber has, at that point, it's hard to undo and equitable mootness is much stronger. I think that could be, but that's the rub about this case is that this is a solvent entity. The debtor has plenty of money to go around, but if they sold the property, they'd have the cash. We could have the cash. Well, but BLC is doing pretty well out of this. This is not a, they've come out of this with cents on the dollar. So let's not play on sympathy factors. Just stay with me for a moment. Because part of my concern, and I think what I'm having trouble with is, it comes out in this. So you sell it for timber, which is what you thought. It's the interplay between the equitable, the indubitable equivalent argument and the appraisal, which is what I'm having trouble with. Because it seems to me that the crux of your argument goes back to the bankruptcy court's finding of fact about the highest and best value, which I do not understand you to have shown is clearly erroneous. You see, and that's sort of where the question goes about selling it for timber as opposed to developing it for highest and best usage is what the bankruptcy court did. And the problem is that the bankruptcy courts across the country do a fantastic job of valuing property, doing arithmetic, and doing all of the things that go into this. The mistake is at that level of equating it, Your Honor, with this indubitable equivalent standard. The problem here is that there is no way for, when you have values that are ten to one apart and have this huge differential like they do in Arnold and Baker and like they do here, there's no way to pick a number in between and say, I'm sure that's right. No, but there is, there has to be a way to evaluate it to get to, there has to be because that's how the system works. It has to be based on a number and your argument devolves to an argument about the appraisal number, which is what the bankruptcy brought its expertise to bear and discredited as they are in the best position, and we defer to them to do, your appraiser for. Let me try and answer it better, Your Honor. There's, it is entirely possible, and we contend, that when you have lands like this, it's simply not appropriate for a plan, for a partial dirt for debt plan, and what bankruptcy courts across the country should be doing is saying no. They should say this plan does not meet 1129. It should have never started the valuation, and there's a second thing. But that's a, and I'm not sure I disagree with you. But what we have here is a finding of the highest and best value of this land that forms, that formed the basis of the indubitable equivalence standard. And what I'm trying to get to is how we find it without undoing determinations that are left to the purview of the bankruptcy court. And, Your Honor, there's, okay, so two thoughts on that. One is that, that is exactly, your question focuses exactly on why we're not here arguing all of the valuation issues, because it's a mess. That's the problem. It's a mess, but I don't, you can't divorce it either. Okay. And, well, let me highlight one other factor, because this may be helpful. Even if you're right, Your Honor, and there's, it's unimpeccable what the, what the district court did, and that property is exactly right, that's the fair market value. If the appraisal is exactly right, is your position? Suppose it's exactly right, what the bankruptcy court did, which we, which it is not. There were no discounts afterwards given for the cost of selling it, cost of commissions, no discounts for marketing periods, the time value of money, loss of funds during the period of time. The fact that you look at each one of these parcels in a vacuum, and that ignores the fact that we're assuming all of them go on the market at the same time. But did they, did that go before the district court? Did she? Yes. All of the discount questions were before the bankruptcy court, and the bankruptcy court just missed it. Even though that same judge has applied discounts and an equity cushion before, the judge just didn't do it in this case. Oh, well, then you're back to the bankruptcy, yeah, the bankruptcy court error. Oh, God. I understand. But if we were to sell the property for exactly the fair market value the bankruptcy court held, we'd have to sell it ourselves for free with no commissions immediately to be able to earn the indubitable equivalent. I know what you're saying. Just procedurally, the district court dismissed your appeal on equitable movements, right? Yes, Your Honor. It didn't reach the review of the land values, did it? No, Your Honor. So my question earlier was, the only issue before us is equitable movements. We would ask this court to look at both issues, and I'll sum it up briefly. I know. Just a minute. But how do we get to the other issue? In other words, shouldn't we have a bankruptcy review, a district court review of the bankruptcy? It's certainly one option. But because the district court would be sitting as a pure appellate court in that context, there's no reason for the delay. It's really a judicial efficiency issue. We're here. The issues are joined. And as in Berman, as in Mack panel, this court has peeked ahead at the merits and seen what's there and whether there's any value. So we can look at anything presented to the district court, even though it relied only on equitable movements? Sure. I mean, it's not a jurisdictional. I understand that. I just want to understand your position. Thank you, Your Honor. And I'll reserve the rest of the time for rebuttal. Yeah. All right. All right. We'll hear Mr. Oliver. May it please the Court, I'm George Oliver, and I represent the Appellee Bait Land and Timber along with Mark Sickman here at Council Table. And if I could get to some of the questions that Your Honor was asking of my colleague here. And also the very good question about why this isn't really a two-party given the magnitude of one creditor's interest to the rather de minimis nature of the other. So just throw that into the mix. Yes, Your Honor. And I don't know that the other creditors would agree that they're de minimis. They're not here today to voice that. But we did have other creditors. We had taxes that were owed. It was a claim of Bank of America, it was a contingent claim of $74 million that was resolved in this case. So other than that $74 million creditor, Bait Land Company was the largest. There were also some two or three secured creditors, there were some unsecured creditors, and now there are administrative creditors in the case which are paid through the bankruptcy process as well. Yeah, but you know, on the equitable mootness issue, and I can tell you this is for me the argument is that equitable mootness basically sort of addresses an impossibility that you can't undo something because normally bankruptcy proceedings are inequity and can be undone in order to carry out the process. But if the proceedings get to a certain point that they become irreversible, it becomes equitably moot. It's a prudential doctrine and we outlined it in MAC plan. In this case, setting aside the merits, we're just accepting Bait Land Company's position, they argue that part of their land, the land that was backing up their loan on which they had a lien, has been removed from the loan making them much less secure. And they say they disagree with the valuation in which case they're going to be deprived of the lien altogether on that land. And it's a fairly persuasive argument for a bank that starts out with ten parcels of land as security and as a result of the bankruptcy proceeding ends up with five parcels. And so that's their argument now. And they argue that, okay, it's not equitably moot, sure, one of those parcels went to the them on their risk. And so they want us, they say it's not equitably moot, it still can be satisfied. The payment to other creditors is immaterial. What they really want are those four parcels to be available to cover their lien if they happen to be right about the valuation. Now that's, I understand their argument and I'd love to have you address that because it sounds fairly, it sounds like a fairly persuasive argument. Yes, sir. Thank you. Judge Niemeyer, in order to address that I would have to remind the court that the position of Baitland Company in the bankruptcy court was that all of the property was not enough to pay them in full. Fair enough. Right. But, you know, ten parcels is better than five, right? Well, I suppose if this were remanded to the bankruptcy court we would have to propose a new plan that would have to address all the claims of all creditors including Baitland Company. It wouldn't have to address everybody else. In other words, their argument is they don't need those and they don't need the land that you sold. They just don't want to be crimped down to the five parcels which was found to be equivalent to the debt. They say, what happens if that ruling is wrong? We'd like to have a review in the district court on that. Yes, sir. The district court dismissed it because of equitable mootness. And my question is, is it equitable moot when they still have a significant remedy they can obtain without infringing on third parties' rights? So what the debtor has done with real estate since, you know, this was part of the equitable mootness is that some of the property has been leased, some of it has been timbered, some of it has been transferred, some of it has been sold. How much do they have left? Some of it they still have. There are some left. I would say... That's their argument. Right. They'll say, I think they acknowledge a release to the land trust because you can't get it back. Well, and they were paid from that sale. You can get it back. And the question is, who has notice? Now, if you have bona fide purchases of value, that creates an enormous problem. But as long as Bait, Land, and Timber has properties that could pay off their debt, they would like to have that available and be able to review it. In other words, the question is, they're denied review of their basic claims on the merits, that is, the improper evaluation, because of an equitable mootness ruling. And the question before us, the real direct question before us, is it equitably moot? Well, and the specific question before the panel, I believe, is was it equitably moot at the time that the district court made its decision? Because you're reviewing that decision that he made last year. And at the time, the argument made by Bait, Land, and Company was that they needed all of the property and that nothing should be sold, and nothing should be done. That's fair enough. You're not understanding my question. My question is, even though they wanted all the land, sure, they had to lend all the land. And you say, well, that wouldn't have satisfied the debt. And I'm saying, well, it does a lot better than having it removed from the land. So my point is, they'll take anything they can get, because they've been deprived of security. This was collateral for their loan. And they say, we'll take any more collateral. I mean, they've been left with five parcels, okay, give us seven. Because we don't know if we're going to be able to get the value the bankruptcy court has. And now, you're taking away a security interest, the bankruptcy court. And really, who comes out good is your client. And the Bait, Land, and Company comes out short, even though they had a lot of collateral, a lot more than they have now. Your Honor, I think the argument simply is procedurally. Why isn't that a good argument, that it can't be equitably moot if there's still relief that could be imposed without affecting third parties? Your Honor, I understand your question. I think it gets to the difference between constitutional mootness and equitable mootness. This is equitable mootness under MAC plan. Yes, sir. I want you to address that. Let's not get the issue. Just direct your argument on that question. I think the way to answer your question is, again, there are four factors. On the question that you're asking is whether there's a way for Bait, Land, and Company to potentially get more property back. Yes, there are some properties that have not been sold, leaned, transferred. And they had a lien on that, didn't they? They did. It was released. Okay. So the bankruptcy court deprived them of a lien on the three parcels that are still left, and they say, give us that collateral. Now the question is, if that is still possible to do, why is it equitably moot? Equitably mootness basically cuts off the action. I think it's because of the four factors with MAC panel, one being the debtors. Will it affect the debtor's success in reorganization? This case was filed in June, July of 2013. It was confirmed in February of 2016. If we go back, we have a debtor. The district court said, you need to strike while the iron is hot, don't you, in this real estate market. The answer is yes. That was at the state hearing. We'll have a debtor that will still be not, it would not promote the finality that bankruptcy court decisions have. A debtor can go and do all of that and just pay the proceeds over. In other words, the only interest Baitland Company wants is to be paid off. And they are claiming, they are claiming, I don't know if it's right or wrong, but they are claiming that their ability to be paid off has been severely impaired by the valuation and the restriction of their collateral. And sure, your client is going on developing to try to get out. That's fair enough. But if that's so, then why not give those proceeds to Baitland Company? Why cut their claim in half, so to speak, because of the valuation, which are challenging? Now, if the valuation is appropriate, why don't they go out and try to sell this thing and they only get 75% of the valuation? Well, and your honor, that gives back. That's a risk they did not assume. Well, it goes back to, again, the bankruptcy process in which 1121 says who can file a plan. They have the right to. You keep going to the merits and I'm trying to avoid the merits. I'm trying to focus on whether this case is moot because we can't unravel it. And my argument, my argument and my question, it's not my argument and conclusion, but my question to you is forget the other creditors. They've been paid off. They can't be retrieved. Forget the land trust. You can't get that money back. But you still have collateral that was denied Bait Land Company, which they could use if the valuation is improper. And so the question is, is it moot if there's still available remedy like that? And MAC plan, I must say, the real underlying philosophy under MAC plan, and as you know, we wrote that opinion, but the real underlying philosophy on that plan is that you can't reorder because of too many interests in third party. You can't pull property back. And that it's inequitable to do so. Yes. Yes. And in MAC panel, one of the facts that's similar here was that the individuals had pledged and given a million dollars towards the plan so that it could pay creditors. And it said, well, it wouldn't be fair to keep that money and also go back. And then they would have lost their war chest, their ability to fight this lawsuit that was pending outside. Here, we've expended the assets, the debtor, the sale proceeds to pay the claims. What if, what would happen, and maybe this is another way of getting at Judge Niemeyer's question that I would find helpful. If we agree with you, or we disagree with you on equitable moot, we find it is not equitably moot, and it goes back, what then? Would we have to, what would we, would we have to address the stay? Would we, or, I'm trying to understand what that looks like, because I'm still not clear about that. I think if you decide that it's not equitably moot, then I think it has to go back to the district court. To the district court to consider. To consider the merits of the equivalent argument and the interest issue, because that's not going to work. Well, there could be a notion, for instance, that you go on developing, you're doing pretty well with the land, and that you'd be instructed to take the proceeds from that and put it in escrow unless, until they're paid, and if they're not paid, in other words, you can keep the money, but. But, Your Honor, I think that would require remand back to bankruptcy court. It might. In the process that started four years ago, and so you would have. But the district court, you see that the district court made one decision for us. Right. That was equitable moot. Yes, sir. Now, if we happen to conclude that this case is not in a posture that's equitably moot, I mean, there's a, the equity in it is that you're going to come out whole, and Bait Land Company is going to come out half. That's their argument, and that's not equitable. When they had the collateral for everything you're making your money on, they had collateral on it. And, I mean, you're selling it, you're developing it, you're leasing it, you're cutting limber, I mean, this type of stuff, and you're making money, and you're probably going to come out whole. It looks like you guys did a pretty good job along the way anyway. Well, and did a pretty good job for Bait Land Company. We're getting back to the facts on that. We do get back. We can't. It's, yeah, even the question implicates the evaluation. It does. It does. And the court had 26 hearings in this case. We had multiple witnesses, 350 exhibits. So what would this look like? Because I'm real, I'm not quite, I'm still not sure I understand. So we, if we disagree with you, that it's equitably moved, because there's still tracks available to play this out, and the debtor goes along developing and leasing and whatever it is, because presumably it would be in, wouldn't it be in everyone's best interest to achieve the highest and best value of this? Well, the history... Where do your interests diverge? The history between these parties goes back to 2006, and it was really... Yeah, it seems, and does bankruptcy ever, I mean, does the process ever end? We hope so. One of the public policies is to promote finality so the debtor can go back into the market and be a viable entity. Right, right. Which that would arrest here. And I think that goes to the third factor in that panel. Yeah. If you're treating them, to get yourself in the market again, in the big picture, you're sort of treating a bait land company as an unsecured creditor. They came in with a lot more security than they're going out. And if they're successful in developing or selling the properties for what the assessment was, there's no harm for anybody. But the question is, I would think it'd be pretty simple is you guys set aside the proceeds from those parcels that were under the lien, set aside the proceeds until you see whether they can get their value. Not to get into the merits. But again, yes, that's a completely different plan. I would ignore that. My colleague has criticized my approach. No, I understand. I would not do that. But it's a completely different plan, which they could have proposed in a bankruptcy case. Which is not the plan. Yeah. I mean, it completely perverts the bankruptcy process. No, that's fair enough. Right. It does, Your Honor. Do you have a bankruptcy process? If I might, Your Honor. Yes. Judge Niemeyer, I believe that your questions go only to the fourth issue in MAC panel, the fourth factor, without considering the others three. And I think that's why when you wrote the opinion in MAC panel, you had four factors, none of which have to have check marks beside them. This balancing test. No, it is. It's an equitable. Yes. Yes, sir. We're really looking at overall equity at halting it. In other words, the bankruptcy process has done its work. Are we going to go and unravel it? Yes, sir. And the question is. We have a policy, a finality, and moving on out of the bankruptcy that started four years ago. Well, that's the point. That's the point. And that goes to the third factor, which you had said you believe cut in favor of Bait Lane Company, but I believe it cuts in favor of the debtor, and that the debtor would go remand all the way back to bankruptcy court, potentially for a new plan, potentially for 26 more hearings. No, if our ruling, what's before is equitable mootness. Yes, sir. If we concluded, hypothetically, that this is not equitably moot, it seems to me the only decent remedy, the only safe remedy for us to do is to send it to the bankruptcy court and let it decide what's necessary. And that's the third factor that would cut against the debtor, because we'd have maybe four more years of hearings on this. Again, it's been heavily litigated. Lots of witnesses. We had soil scientists, timber people, appraisers, utility, wastewater folks. We had bank experts, all sorts of people here. And the judge went through, she wrote over almost 100 pages in her orders of findings of that. Well, that's the third factor. How does that affect the success of the reorganization plan if you follow what Judge Meemeyer was talking about, putting assets up until you get to a certain point, and it might make them whole? Well, Your Honor, that goes to the history between the parties. This was really a domestic dispute in bankruptcy court. It was a divorce for these folks that had been at odds with each other since they were six with self-financing. It seems to have been what precipitated the bankruptcy in the first place, that you couldn't get together and work this out. Yes. And trying to timber a new release would be 9% interest. There are all sorts of things that were a problem and an unwillingness for the parties to be able to get past those. And so the Dirt for Debt plan allows that divorce to happen. Take enough collateral so that you're paid in full and cash. Remember, they were paid over a million dollars in addition to the property here. And then we take ours and go on. Another fact that's similar to McPanel is that they're in competition with each other. This is not a bank we have here that took property back under the plan. They owned, managed, and timbered some of these tracts and farms in this tract for years and years and years before they sold it to my client under a seller financing arrangement. And so now they have it, and so these parties are in competition with each other as in McPanel where the question was raised by the court in that case. If a creditor would just act as a creditor, perhaps they would be happy with being paid in full. Here from the Coastal Land Trust sale, which would have been stopped by a stay, they were paid over $800,000 towards their claim. I'm going to ask Mr. Learberg this as well, but if we don't agree that it's equitably moved, what does the district court do with it? I think... Does it go back to the district court? What should we do? I think it should. What then? Do we send it to the district court? Do we send it back to the bankruptcy court? If we send it back to the bankruptcy court, do we tell them to start over? What's the next step here? I think that if you decide it's not equitably moved, it would go back to the district court for determination of merit.  whether the equivalence was indisputable. We would review the facts. Yeah. Well, I believe that the... We do that. I don't know that they're even... That's a big joint appendix. I don't think the exhibits are even part of that. We're not designated by any party.  But your argument... The 350 exhibits... Your response to my question... Yes, ma'am. ...is that it would go back. Probably go back. I think it would go back. I think it would go back with a remand for, I don't know if there's some direction as to dual equivalence or evaluation. I don't know how a court would look at the 100 pages of orders and 26 hearings and do it differently. What the court would do is review it and say, did the bankruptcy court err, either in law or in fact, and under the standards appropriate. Now, the argument is since the bankruptcy court would be reviewing the cold record on such a thing, they argue we should do that. Well... Now, if we should do that... I filed a motion to limit the issues in this appeal. That's a pretty big library you have there. It is a lot of joint appendix. Well, the bankruptcy court wouldn't be reviewing the cold record. No, the bankruptcy court would remand with instructions if that's what your honor did or the district court. To either do it over or do something... I suppose. Again, we'd get strapped in for another three years of hearings. But we filed a motion to limit the issues to equivalentness for the reason that you're asking about, Judge Niemeyer, is that a reading of 28 U.S. Code 158B is that you have jurisdiction for all final judgments of the district court and the only final judgment we have is the equivalent decision. Except we have lots of cases where if three issues are presented to the district court and the district court rules on one of them and you appeal that, we can look at the other issues presented to the district court even though it didn't reach it. Yes, sir. We do it on the record. That was before the district court. Now, we have the choice to do that or we can send it back to the district court. I don't know if it has to go to the bankruptcy court because it did its work. The bankruptcy court made all the findings and it's pretty extensive and it seems to me the only question, reasonable question, would be whether there's any future in giving it to the district court or should we do it? Yes, sir. I see that I'm out of time. Go ahead and answer if you have something to say. Yes. Well, I would say that the only decision by the district court was in the motion that we filed for equitable mootness, that that was the only issue before the district court when it ruled. It had the entire appeal but it didn't rule on that. It just said it's equitably moot due to the reasons in there and so I understand your position that you can rule on other issues before the court, the district court, but I don't think other issues were before the district court when it ruled on that motion. That motion was only about the equitable mootness. I thought there was an appeal to the district court. There was. And in the appeal, the motion to dismiss was granted. That is correct, Your Honor. And I was trying to draw a distinction between the only issues raised in the motion to dismiss as opposed to the appeal which the district court did not reach merits on. Thank you, Your Honor. All right. I guess we're going to hear from Ms. Biggs. Changing horses in the midstream. Apparently, Your Honor. And you sort of heard my question. I know I haven't given you time to say who you are. Thank you. That's okay. I'm Lori Biggs. I'm happy to answer your questions. And it's the one that I indicated that I'm just, what happens if we agree with you procedurally? Simple answer is we want to be paid. We don't believe we've been paid. We want the case remanded. Yeah, I get that. I do get that. But how does procedurally? I think procedurally, we want the case remanded to the bankruptcy court to apply the correct indubitable equivalent standards, which is the same as cash. If you, to get to the question. Ah, so you just want to undo dirt for debt altogether. We don't want to undo the concept of dirt for debt. But you don't like how the district court applied it. I mean, the bankruptcy. So that's a big barrier, you know, under the review standards. We don't like how the bankruptcy court. We get that. We get that. But that goes back to, that goes right back to the evaluation. It doesn't go directly to valuation. The courts that have reviewed indubitable equivalents, for example, the Arnold and Baker case actually accepted the bankruptcy court's valuation and said that is still not the indubitable equivalent of cash. Okay, so. Because they said that there was too much uncertainty in valuing farmland, townhouses, developed lots. We are at the very far end of the spectrum here with undeveloped land. Okay, so could you help me? I'm not, I'm actually not trying at all to be argumentative. I'm just asking you what that looks like. So what does it do to the valuations and the appraisals? In this case, we believe that there is too much uncertainty with raw land that's not developed. Just get to the end, okay? We believe the land has to be sold. Because I'm getting confused along the way. We believe the land has to be sold to determine its value. And so you're either saying it has to be sold now when it hasn't, and that gets back to my problem. It goes back to selling it now for the timber value because it hasn't realized its highest and best use. So it is a valuation argument. Your Honor, I guess where we have the difference is we don't believe as the secured creditor we should take the risk of the downside. I get you. I completely understand. I am completely on board with that. I mean, I understand what you're saying. The only point is it renders the bankruptcy court's findings about the appraisal clear. It makes it clear error. You can't have it both ways. You have to sell it. It seems to me what this focuses on is there are several approaches to resolving an estate, a bankruptcy estate. And if providing land for cash is an appropriate method, if correctly applied, then the only question is was it correctly applied. And in this case, if it was correctly applied and all the things you talked about the bankruptcy court did consider, and it's a pretty lengthy evaluation and assessment, and it compromised between the two numbers supplied by the parties. Sure, it was closer to bait, land, and timber, but it still made those assessments. Now if all we're doing is evaluating whether the bankruptcy court committed error, we could do that or the district court could do that. But if we conclude they didn't commit error, that ends it. Certainly sending it back to the district court for a review of all of the issues, not just the ones before you, is another option. What other issues is there? We raised good faith. We challenged valuation. We raised default interest and contract interest. And we challenged the overall fair and equitable nature of the plan. What would happen to you if you got an opinion from this court that says we find in favor of you on equitable goodness, but we affirm the bankruptcy court on the individual equivalent, and we fine for the bankruptcy court on the interest adjustment? The question would be what happens to the district court's other issues that we raised in that opinion if it's not moved, like good faith, like valuation, and default interest, and other issues that we did not bring before this court. So you still want to undo individual equivalence? Correct. We don't believe we received the cash equivalent of our claim. And looking at the courts that have looked at that issue, they resolved the issue without getting to valuation, because they said land is too uncertain to value. They rejected indubitable equivalence while accepting the valuation. So I don't think this court has to accept or get into valuation to find it. So we could accept it? That's what they did in Arnold and Baker. They said, Your Honor, I see I'm out of time. But Your Honor, they accepted valuation said, that is a clearly erroneous standard. We don't need to decide that. But we still believe it is not indubitably equivalent. Courts don't go into valuation. Thank you. We'll come down and greet counsel and proceed on the last case.
judges: Paul V. Niemeyer, Allyson K. Duncan, Henry F. Floyd